# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FLOYD L. SEMONS,

    Plaintiff,

v.                                     Case No. 13-CV-994

JIEIRE A. VANCE, RANDALL WILBORN,
PAUL HEIN, BEVERLY WILLIAMS,
DANIEL R. BRODSKY, JASON RUMPEL,
STEVEN HAW, and MICHAEL ZETTING,

    Defendants.

## SCREENING ORDER

The plaintiff, who is incarcerated at Green Bay Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983. This matter comes before the court on the plaintiff's petition to proceed *in forma pauperis*. The plaintiff has been assessed and paid an initial partial filing fee of $9.50.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as

frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The plaintiff was incarcerated at the Milwaukee County Jail ("Jail") at all times relevant and the defendants are officers at the Jail. According to the complaint, on June 24, 2013, defendants Officers J. Vance and R. Wilborn struck the plaintiff in his "body area" with their hands. Defendants Officers D. Brodsky, J. Rumpel, and M. Zetting forced the plaintiff to the ground. Defendant Lieutenant Hein tased the plaintiff while he was hand-cuffed and his arms were attached to a "Ripp belt" that secured around his waist. Defendant Captain Williams failed to protect the plaintiff from harm because the incident was not recorded, in violation of Jail policy. Defendant Vance ordered the plaintiff restrained in the Ripp belt for 48 hours. He could not eat, sleep, or use the toilet while restrained in the Ripp belt.

The plaintiff claims that the defendants used excessive force against him on June 24, 2013, and that the use of the Ripp belt violated his Eighth Amendment rights and Jail policy. For relief, he seeks an order that Jail officers stop putting inmates on "restraint watch meaning no eating, sleeping, using the toilet," a doctor's opinion whether inmates should be placed in their cells in restraints, an order that the Jail inform inmates' families when they are placed in their cells in restraints, and an

order that the defendants not work at the Jail. (Compl. ¶ V.) The plaintiff also seeks $1,000,000 in damages.

In addition to the complaint allegations regarding the incident, the plaintiff attached to the complaint two officers' Incident Reports and three officers' Supplementary Reports. He alleges that these reports support his complaint allegations and provide proof of his excessive force claim. The Court considers the Incident Reports and Supplementary Reports as part of the complaint for screening purposes. *See* Fed. R. Civ. P. 10(c) (a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes). The Court will quote at length from Officer Vance's Incident Report:

> I was assigned to Housing Unit (Disciplinary/Segregation), which is a housing unit for inmates that can not conform to jail rules and regulations with partners CO Randall Wilborn and CO Michael Zetting. At approximately 0915 after being assessed [ ] by psych doctor Jennifer Lothonian it was apparent that inmate Semons was agitated from what was said and concluded from the assessment of his suicide watch status. My partners Zetting and Wilborn escorted inmate Semons to his cell (Sub Pod B cell 12) when inmate Semons began to request a new cell, a RIPP Bed, food tray, and meds before entering his cell. I then entered the sub pod to try to talk with inmate Semons to gain compliance to get him to go into the cell. I informed inmate Semons that he would be moved to a different cell with a working light, his chicken loaf order was verified and resubmitted, the nurse was on the pod for his meds and that the RIPP Bed wasn't necessary. Inmate Semons then said "This has nothing to do with you Vance, I'm on bullshit fuck it." I then called for a supervisor via radio to allow inmate Semons to speak [to] a supervisor. At that time both Lieutenant (Lt) Steven Haw and Lt Crystalina Montano arrived on scene. After multiple attempts to gain compliance with inmate Semons to go into his cell he was reluctant to do so and tried to drop to the ground to prevent us from escorting him to his cell. C Wilborn and I stabilized inmate Semons on the wall as he began to struggle with us, which we then immediately decentralized him. Lt Haw, via radio, made an all call to master control for additional officers.
>
> I continued to talk with inmate Semons while he was still secured on the floor, informing him that he was alright, calm down and breath[e]. I explained to him that we would attempt to escort him to his [cell] again and asked if he was willing to cooperate. At this time additional officers such as COs Michael Hannah, Daniel Brodsky, Jason Rumpel, Rashed Farrakhan along with supervisors Lt Paul Hein, Captains Beverly Williams and Thomas Meverden arrived on the scene to assist.

- 4 -

> Inmate Semons agreed to go into the cell and was escorted to the new cell we assigned to him. As he went into the cell and placed his arms out of the food chute to have the RIPP Restraints removed, CO Wilborn ordered him to place his left hand on the window once the cuff was removed. When the cuff was removed he refused to place his hand on the window and would not place his hands back inside of the cell. COs Brodsky, Hannah and Wilborn attempted to put his arms and hands inside the cell but inmate Semons was resistant, aggressive and noncompliant, not allowing staff to put his arms back inside of cell. CO Jason Rumpel also assisted while I got in position to lock the food chute if we were ever able to get his hands inside the cell.
>
> At this time I decided the best option for us to prevent staff or inmate Semons from any injuries was to get him to the back of the cell and get the RIPP Restraints back on inmate Semons and conduct a restraint watch on him being that he still had one of the cuffs of the RIPP Restraint still on his right wrist. We then cracked the cell door and escorted inmate Semons to the back of his cell and reattached the cuffs. Due to inmate Semons' history of breaking and popping sprinkler heads by getting out of the belt portion of the RIPP Restraints, I felt it was necessary to apply several zip ties to the RIPP Restraint belt.
>
> Captains Williams along wtih Lieutenants Hein, Haw and Montano all agreed and allowed us to apply the zip ties. After the restraints and zip ties were placed on inmate Semons and officers attempting to back out of the cell and shut the cell door he began to rush towards the door to get out of cell. There were multiple attempts by multiple officers to keep inmate Semons in his cell. Inmate Semons finally managed to get one leg out of the cell door, preventing us from completely shutting the door. At that time Lt Hein removed the cartridge from his taser and informed inmate Semons that he would be tased if he continued to fight and struggle with staff. Inmates [sic] totally disregarding what was said and as a result was drive-stunned in the left shoulder.
>
> We were then able to close the cell door while conducting a RIPP Restraint watch as planned. Nurse Sheventra Jackson assessed inmate Semons and he said "I'm good that little ass taser didn't even do shit." Proper debriefing was conducted and regularly scheduled duties were resumed.

(Compl., Ex. 2 at 2-3.) Defendant Officer Brodsky's Supplementary Report provides the following additional details about the RIPP belt restraints.

> RIPP belt restraints were reapplied to inmate Semons' wrists and the door was opened, in order for officers to enter the cell and secure the inmate. CO Jason Rumpel, CO Wilborn, CO Hannah, and myself entered the cell and stabilized inmate Semons on the floor of his cell. I secured his right leg. The order was given by Lt. Steven Haw to place inmate Semons on RIPP belt restraint watch, a watch in which the inmate is placed in RIPP belt restraints, to ensure that he does not harm himself or others, and

- 5 -

> is monitored every 15 minutes to ensure that the inmate is not manipulating his restraints. I resecured the RIPP belt restraints to inmate Semons' waist and applied 3 plastic zip ties to the back of the belt to ensure that the belt could not be manipulated or removed without approval.

(Compl., Ex. 2 at 6.)

Here, the complaint allegations, together with the Incident Reports and Supplementary Reports, show that the officers did not use excessive force in violation of the Eight Amendment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety . . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . . The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Guitron v. Paul*, 675 F.3d 1044, 1045-46 (7th Cir. 2012) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)); *see also Hudson v. McMillian,* 503 U.S. 1, 7 (posing the inquiry as "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

The defendants did not use force against the plaintiff until he failed to comply with officers' orders. When force was applied, the plaintiff continued to resist and fight back. The force used was the necessary to confine the plaintiff in his cell. Even if "it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable," *Whitley,* 475 U.S. at 319, "an error of judgment does not convert a prison security measure into a constitutional violation." *Guitron*, 675 F.3d at 1045-46 (affirming dismissal of complaint at screening where guard used force against prisoner who failed to comply with orders to get against a wall). In addition, defendant Hein's use

- 6 -

of the taser on the plaintiff was preceded by the plaintiff refusing to remain in his cell, charging the cell door, and getting his leg out of the door so that officers could not close it. Defendant Hein warned the plaintiff and provided him an opportunity to comply before applying one five-second drive stun to the plaintiff's shoulder. Under these circumstances, the use of a taser does not violate the Eighth Amendment. *See Lewis v. Downey*, 581 F.3d 467, 477-78 (7th Cir. 2009).

However, the plaintiff also alleges that he was unable to eat, sleep, or use the toilet for 48 hours as a result of defendant Vance's order that he remain in his cell in RIPP restraints. Although not entirely clear, it appears that officers checked on the plaintiff every fifteen minutes during this time period. In any event, at this stage, the plaintiff may proceed on an Eighth Amendment claim against defendant Vance based on his RIPP restraint allegations. *See Payette v. Hoenisch*, 284 F. App'x 348, 352 (7th Cir. 2008); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The court finds that the plaintiff may proceed on an Eighth Amendment claim against defendant Vance as described herein. The remaining claims and defendants will be dismissed.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket # 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for order to support complaint (Docket # 8) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants Randall Wilborn, Paul Hein, Beverly Williams, Daniel R. Brodsky, Jason Rumpel, Steven Haw, and Michael Zetting are **DISMISSED**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon the defendant pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or

attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because in forma pauperis plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS ALSO ORDERED** that the defendant shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $340.50 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Prorgram, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Green Bay Correctional Institution and Waupun Correctional Institution and, therefore, if the plaintiff is no longer incarcerated at either institution, he will be required to submit all correspondence and legal material to:

Honorable Nancy Joseph
% Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 14th day of November, 2013.

                                          BY THE COURT

                                          *s/Nancy Joseph*
                                          NANCY JOSEPH
                                          United States Magistrate Judge